November 28, 1904.

————o————

## No. 3429.

(Court of Appeal, Parish of Orleans.)

## MRS. MARY NULTY, Authorized, vs. L. E. JUNG & CO. et al.

1. Where the regime of the community exists, the wife claiming to be a public merchant by investment of her separate funds, must conclusively show that she has retained the sole administration thereof

18

and is carrying on in her name a separate trade from her husband's.

2. Where, as in this case, through a succession of years, the preponderance of the evidence demonstrates that the husband figured, by sign, accounts, cards, and orders for goods in his name, as the head and front of the business carried on by himself and wife, its accumulated assets, as the product of their joint labor and industry, fall in the community and are liable to seizure for the husband's debts. R. C. C. 131, 36 A. 390, 40 A. 262.

Appeal from Civil District Court, Division "B."

E. K. Skinner, for Plaintiff and Appellant.

McCloskey & Benedict, for Defendant and Appellee.

Cage, Baldwin & Crabites, for Defendant and Appellee.

BEAUREGARD, J. The firm of L. E. Jung & Co., in June, 1899, on his order, sold and delivered at the grocery corner of Thalia and Willow streets, 1 cask of whiskey, 1 barrel of claret and 5 cases of Colombo Bitters, amounting in value to $54.99, and the cases of bitters to $33.75 or 5 dozen in all at $6.75 per dozen.

On repeated demands to pay, which proved of no avail, suit was brought in the (old) First City Court; and to the amount of their claim ($54.99). Judgment in favor of Jung and Co., was rendered and followed by execution whereunder the contents of the grocery referred to were seized.

On Mrs. Mary Nulty's affidavit as to her ownership of these contents, the seizure was released.

Later on, January 17, 1900, averring Mrs. Nulty's purchase of these articles as a public merchant and through her husband's agency, Jung & Co. brought suit against her for the value of the goods above mentioned.

This suit culminating in a decree rejecting plaintiff's demand,

19

and now pending on appeal before this Court (No. 2478 of its docket) was followed by an alias writ issued in the Jung & Co's. case vs. Ed. Nulty referred to above.

It appears that Ed. Nulty kept a barroom at the corner of Calliope and Liberty streets; that he or his wife or both of them kept at the same time a grocery at the corner of Thalia and Willow streets; that the contents of this grocery were sold for $1100 to one Catalona through the brokerage or agency of one Leon Block who sued husband and wife in solido for his commission, which under decree of the Court of Appeal was awarded to him as prayed for; that the bar room in question was sold by Ed. Nulty to his brother in law for some $250.00; that the proceeds of sale of the grocery (it is alleged) were re-invested in the establishing of a new grocery at the corner of S. Robertson and Philip streets. It was upon the contents of this grocery that the alias writ was levied to the extent of about $320.20. Failing to effect the release of this seizure under her affidavit of ownership of the goods seized on plaintiffs in execution furnishing a bond of indemnity, Mrs. Nulty—by injunction—stayed all further proceedings; setting up the illegality of said seizure; the injury thereby done to her credit and reputation as a public merchant, the malicious execution of the writ by the Constable (made a party defendant) and the resulting damage which she claims due to her therefor which she estimates at $2000, but reduced, on trial of the case, to $1500, with reserve of right by her Counsel to sue for $500 attorney's fees.

The jury which was prayed for and heard the case awarded plaintiff the sum of $1.00. On new trial by the Judge alone, his decree dissolved the injunction, rejected plaintiff's demand and awarded as Attorneys fees to the plaintiffs in execution $100 and to the Constable, also as Attorneys fees $50.

It is from this judgment that plaintiff in injunction appeals.

The contention on Mrs. Nulty's behalf is that she was a public

merchant carrying on a separate and distinct trade from her hus-band and that the assets of her business, were not liable for his debts.

On the other hand defendants in injunction contend, substantially, that the grocery—the contents of which were seized—was carried on notoriously by the husband and wife; that if the wife had therein any separate funds they were not administered by her alone but with the assistance of her husband; and that the fruits of the labor and industry of both fell in the community and were therefore liable to seizure by the husband's creditors.

An examination of the evidence of record reveals, pretermitting the many details with which it is replete, the following salient facts:

That Mrs. Nulty, claiming to have received about ten years prior to the present suit from her mother three days before she died, the sum of $200, loaned the same to an uncle of hers who returned it to her two or three years afterwards with accrued interest amounting to the sum total of $265.—with which she opened the grocery corner of Thalia and Willow streets; that her husband who was about that time a policeman, being in ill health resigned from the force and opened a bar room corner of Callicpe and Liberty streets. The two establishments were run contemporaneously. The record teems with proof showing that goods were ordered by Ed. Nulty and received by him at the grocery corner of Thalia and Willow streets, including those sold by Jung & Co. No sign indicated that Mrs. Nulty was the proprietress; sales were made over the counter by husband or wife and accounts were indiscriminately charged either to the wife or husband whose "Prize Cards" 10 cents each entitled: "Ed. Nulty, Fancy and Staple Groceries, Fine Wines, Liquors, Wood and Coal, Cor. Thalia and Willow streets," were distributed to the public or were an accompaniment to the sales therein made.

When the second grocery, was opened the same uncertainty

21

prevailed as to its proprietorship. The husband and wife were, however, seen selling over the counter; either giving orders to Drummers for the purchase of goods, the sellers of which kept accounts in the name of either husband or wife, a sign, as a present, states one of the drummer witnesses, to the husband bearing the name of "Ed. Nulty," "Royal Victory Whiskey" was put up on the grocery to the knowledge of and without any protest from the wife; the husband had in his name petitioned the City Council for and obtained in his name a permit to open a bar room in the said grocery, notwithstanding the active opposition of the taxpayers of the vicinity. Then it was after the passage of the ordinance in the husband's favor that the alias writ issued and that, along with the articles seized, was included a wagon which bore the sign mark of "Ed. Nulty." Little importance is attached to the testimony of the wife who says that if the wagon was marked as stated above, it was due to a mistake of the blacksmith, and which she attempted to correct by prefixing to the sign with paint and brush "Mrs." and which was so faint as not to be discernible.

The record further shows that, although the accounts referred to above were kept in the name of husband or wife, that at a certain stage of the grocery business, one of the sellers was instructed to change the account from Mr. to Mrs. Nulty. Several suits had about that time been brought against the husband; and the inference is natural that as precautionary measures, efforts were made by the wife and husband to screen the liability of either, one behind the skirts of the wife, the other behind the irresponsible financial condition of the husband.

All of these signs, the whisky sign, the wagon sign, the prize card sign, the orders issued for groceries or wines by the husband, the selling over the counter tend to negative the idea that the wife had retained the separate and distinct administration of her separate funds and that the produce of the common labor and

22

industry of both should be attributed to that of the wife alone under aegis of her being a public merchant. Besides, this Court is confronted with one of its decree against the same parties. Mr. and Mrs. Nulty, held in solido for a commission against both in solido and presume to have been rendered on evidence fixing their solidary liability, with the fact that the Jung & Co's. goods were delivered at the corner of Thalia and Willow streets; that a dispute arose only as to the Colombo Bitters; that the bill therefor was never paid and the goods consumed, there can be at least little doubt on this score as to the claret and whisky at the grocery in question. With the futher facts that a jury found for plaintiff in injunction the insignificant sum of one dollar, and that the trial Judge who saw and heard the witnesses rendered the judgment appealed from.

Besides, further, the surrounding circumstances which a careful reading of the record reveals as pointing to the studious efforts of both husband and wife to keep the general public in the dark as to their commercial status, it is believed that the authority in 36 A., 390, to which the Court is referred by Counsel for defendants in execution is opposite and can be justly applied to the present case: "Where after marriage and under the regime of the community, a business which had formerly (which is very doubtful in this case) belonged to and been conducted by the wife, is conducted in the name of the husband, it becomes the business of the community; and its accounts and good-will are liable to seizure for the husband's debts."

So viewing the situation, this Court is of the opinion that the judgment appealed from, should not be disturbed. It is therefore so ordered.

Dufour, J., concurs in the decree.

November 28, 1904.

Writ refused by Supreme Court, February 27, 1905